## HARMON *v.* STATE.

(Division B.   June 13, 1932.)

[142 So. 473.   No. 30112.]

**Leftwich & Tubb**, of Aberdeen, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General for the state.

**Griffith, J.**, delivered the opinion of the court.

Appellant, a young man twenty-two years of age, of established good character, was convicted, and sentenced to life imprisonment, as an accessory before the fact in the murder of Remus Cooper, on the uncorroborated testimony of Martha Cooper, the nineteen year old daughter of the deceased. The said daughter was the actual killer, as she freely admitted on the witness stand. Mr. Cooper was slain with a shotgun as he lay sound asleep about ten o'clock at night. He was a tenant farmer, and he and his daughter were the only occupants of his home. She had taken the shotgun from its accustomed place in the house and had hidden it near her bed, and after her father was known to her to be in deep sleep she crept to his bedside and discharged the gun into the vitals of his body at close range. Immediately after the shooting, she ran to the home of a near neighbor and told that, while she and her father slept, some unknown man had come into her father's room and had taken the shotgun from the rack and had then gone into the kitchen, and that, while he was in there, she had jumped up and escaped from the house, and that as she paused on

the porch she heard the gun fire, and that this man had shot her father. She went into details in describing the man and the appearance of the clothes he wore.

Five days later this daughter was taken to jail, and thereupon she entirely changed her statement and admitted that she alone had killed her father, and averred that no other person had any part in the crime. She gave as her reason for the act that her father had been guilty of certain unnatural conduct not here necessary to mention, except to say that it appears evident that she soon suspected that this latter story would not be accepted as believable; and she then adopted another version which was that she had killed her father because on the day of the killing he had whipped her.

After she had been in jail about two weeks, she made still another change in her story, and this was that she had slain her father at the suggestion and on the advice of this appellant; that appellant had planned the deed for her, and had told her that, after she had shot her father and got him out of the way, appellant would marry her and they would live a happy life, although it is shown by the evidence that appellant was a married man and the said murderess knew it. Her testimony on the preliminary trial, although she then implicated appellant, did not correspond in significant particulars with what she swore in the subsequent main trial; and just here we note that which also bears a perceptible significance in relation to the validity of the conviction of this appellant on this record, namely, that this girl, although on her own admissions she was guilty of a murder almost without parallel in its heartless and sneaking cruelty, was permitted by the prosecution, a few days before the trial of appellant, to plead guilty to a lesser offense, and received a sentence of only five years in the penitentiary. It is further shown that four days before the trial of appellant, the prosecuting witness, Martha Cooper, stated to two persons who visited her in jail that appellant was not guilty and had nothing to do with the killing and

two days later she repeated this statement to three others who visited her in jail.

Appellant denied with positiveness and consistency every statement of the prosecuting witness which would connect him with any criminal part in the murder. His statements and versions are corroborated by other witnesses, and the testimony of the prosecuting witness of the times and occasions when she says the plans for the killing were proposed and were laid by appellant is strongly discredited by the positive testimony of several witnesses other than appellant. The motive for the killing which was sought to be ascribed to appellant was weakened by the evidence of the other witnesses to the point that it practically disappears as a thing of any dependable substance, so far as appellant is concerned and so far as the pages of this record disclose.

Without pursuing the details, since they are all confirmatory of the summary above set out, we are of opinion that we have here a case which falls within the principle of adjudication applied in Sykes v. State, 92 Miss. 247, 45 So. 838, and that a conviction ought not to be allowed now to stand on the uncorroborated testimony of this woman, who, in addition to being an admitted, ready, and voluble liar, is shown in the very nature of her crime and the circumstances of its actual commission to be practically destitute of normal moral concepts and of those essential moral qualities which give dependable validity to sworn testimony. Compare White v. State, 146 Miss. 815, 112 So. 27; Hunter v. State, 137 Miss. 276, 102 So. 282; Abele v. State, 138 Miss. 772, 103 So. 370. At least, we say that a conviction should not be allowed to stand on her uncorroborated testimony, and when the defense is corroborated, as it has been on this record, until the third jury shall have considered the evidence and shall persist in the same verdict of guilty. Section 592, Code 1930.

Reversed and remanded.