CARLTON, J.,
for the Court:
¶ 1. Sam Green appeals his conviction in the Grenada County Circuit Court of armed robbery and his sentence of twenty-five years in the custody of the Mississippi Department of Corrections. Green argues that the weight of the evidence did not support the jury’s verdict. Finding no error, we affirm.
FACTS
¶ 2. On October 7, 2008, two men robbed the Pacesetter Conoco convenience store and service station in Grenada, Mississippi. The Pacesetter cashier working at the time of the robbery, Joyce Naramore, reported to the Grenada Police Department that one of the robbers held a shotgun on her while the other emptied the cash register. Naramore described both robbers as black males, and she described the man with the shotgun as the taller of the two men. Naramore also described the man with the shotgun as having lighter skin than the other man. After emptying the cash register, the robbers left.
¶ 3. Neal Anderson, a local resident living on the street behind the Pacesetter, testified that on the night of the robbery, he noticed a small green Honda parked in front of his house. Anderson testified that he approached the car, and he made inquiries as to the two occupants in the car. The occupants told Anderson that they were having trouble, and they said help was on the way. Shortly thereafter, Anderson said he saw two men running towards the Honda; one had a shotgun and fell down while running to the car, but he eventually made it to the car with the gun. The Honda drove off with four passengers, and Anderson called 911 to report the incident.
*1142 ¶ 4. Anderson’s description of the green Honda led police officers from the Grenada Police Department to be on the lookout for, and to ultimately stop, a car meeting that description. When the police stopped the green Honda, two occupants fled, and the other two were taken into custody. One of those arrested was Arlena Harper, who owned the Honda. The police took Anderson to the green Honda, and Anderson identified it as the one he had observed parked behind the Pacesetter.
¶ 5. Harper’s boyfriend, Ladarius Woo-dall, was subsequently arrested and charged with the armed robbery at the Pacesetter. Woodall implicated his half-brother, Marquis Wiggins; Harper; and Green in the robbery. Harper and Woo-dall testified against Green at trial.
¶ 6. At trial, both witnesses described for the jury how all four of the suspects retrieved a shotgun and planned the robbery of the Pacesetter while parked in Harper’s Honda behind the Sonic Drive-In adjacent to the Pacesetter. Both Harper and Woodall stated that Wiggins drove the Honda. Woodall testified that he, Green, and Wiggins all went into the store at various intervals to check it out prior to the robbery. Woodall and Harper testified that Wiggins refused to go into the store to commit the robbery, so Woodall and Green entered the store to commit the robbery, and Wiggins remained in the Honda as the get-away driver. Woodall stated that he and Green entered the Pacesetter, and Green held the shotgun on the clerk while Woodall jumped on the counter and emptied the cash drawer. Harper testified that after robbing the Pacesetter, Woodall and Green ran back to the car. At one point while running back to the car, Green fell with the shotgun. Once back in the car, Harper said that Woodall and Green started counting money from the robbery.
¶ 7. Woodall and Harper testified that later, they decided to go to another store, but on the way, the police stopped them. Woodall and Green managed to run away from the officers, and they made it to Woodall’s sister’s house. Woodall and Green finished splitting the robbery proceeds between themselves there. Woodall and Green were eventually arrested and indicted on the charge of armed robbery.
¶ 8. A jury trial was held in the Grenada County Circuit Court on January 19-20, 2010. At trial,' Naramore identified Green as the robber with the shotgun. Green’s father testified on his behalf and stated that Green was not a violent person. The defense attempted to introduce favorable character evidence that Green was a special-education student. However, the circuit court excluded this evidence after objections by the State.
¶ 9. The jury convicted Green of armed robbery, and the circuit judge sentenced Green to twenty-five years in the custody of the Mississippi Department of Corrections. Green subsequently filed a motion for judgment notwithstanding the verdict (JNOV), or, in the alternative, a new trial, which the circuit judge denied. Green now appeals, claiming that the jury's verdict is contrary to the weight of the evidence.
STANDARD OF REVIEW
¶ 10. In Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005), the supreme court discussed appellate review of the weight of the evidence supporting a jury’s verdict, stating:
When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.... Howev *1143 er, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, as the “thirteenth juror,” the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
(Citations and internal quotations omitted).
DISCUSSION
¶ 11. On appeal, Green claims that Woodall and Harper provided unreliable testimony to accuse him of robbing the Pacesetter, and he asserts the circuit court erred in failing to grant his motion for a JNOV due to the insufficiency of the evidence to support his conviction. Green argues that Harper and Woodall were romantically involved, and he asserts that Wiggins was Woodall’s half-brother. Green argues that he served as the “most convenient scapegoat” to take the blame for the robbery. Green claims that Woo-dall, who testified under a plea deal, gave conflicting statements. Green claims that Woodall’s conflicting statements began when Woodall denied being in Grenada on the night of the robbery, and then they continued when Woodall later admitted to committing the robbery. Green claims that Harper, upon her arrest, also denied being in Grenada, and she tried to pin the robbery on someone else. Green alleges that Harper later changed her story, and Green claims that Harper and Woodall provided false facts to implicate Green in the robbery.
¶ 12. Green cites to Jones v. State, 368 So.2d 1265 (Miss.1979), wherein the Mississippi Supreme Court reversed and discharged the defendant, Jones, after determining that his conviction for grand larceny was based on the unreliable testimony of an accomplice who had negotiated a plea bargain. Green claims that like Jones, the co-defendants’ testimonies were uncorroborated and presented conflicting stories. We note that the Jones court reiterated the general rule that the testimony of an accomplice “must be viewed with great caution and suspicion. Where the testimony is uncorroborated, it must also be reasonable, not improbable, self-contradictory[,] or substantially impeached.” Id. at 1267. The Jones court also stated that “while a conviction may be sustained on the uncorroborated testimony of an accomplice, ... such a conviction should not be upheld where such testimony is improbable, self-contradictory, and unreasonable on its face, and especially where it is impeached by unim-peached witnesses.” Id. at 1268 (citing Creed v. State, 179 Miss. 700, 705, 176 So. 596, 597 (1937)).
¶ 13. In Jones, the supreme court noted that Jones’s conviction was based upon the uncorroborated testimony of a convicted felon and confessed accomplice, whose sentence was deferred pending Jones’s trial. Id. at 1269. However, the record before us in the present case provides testimony from numerous witnesses who identified Green as the robber. Besides the testimonies of Harper and Woodall, Naramore, the Pacesetter cashier working the night of the robbery, provided an in-court identification of Green as the armed robber. In addition, Anderson’s testimony corroborated Harper and Woodall’s testimonies that the taller of the two male robbers running from the Pacesetter, whom Harper and Woodall identified as Green, possessed the shotgun, and testified that this taller male robber fell while fleeing the crime scene in route to the green Honda.
*1144 ¶ 14. Our supreme court has established that “the jury is the sole judge of the credibility of witnesses, and the jury’s decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict.” Billiot v. State, 454 So.2d 445, 463 (Miss.1984); see also Langston v. State, 791 So.2d 273, 280 (¶ 14) (Miss.Ct.App.2001). Additionally, we recognize that the jury is the judge of the weight and credibility of the testimony, and the jury is “free to accept and reject all or some of each witness’s testimony.” Tyler v. State, 478 So.2d 315, 317 (Miss.1985). On our review of the record, viewing the evidence in the light most favorable to the verdict, we find that sufficient evidence, in addition to the accomplices’ testimonies, exists in the record to support the jury’s findings. This issue lacks merit.
¶ 15. THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GRENADA COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR.